UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JARIAN MADISON                                                CIVIL ACTION

VERSUS

PALA INTERSTATE, LLC, ET AL.                    NO.: 13-00765-BAJ-RLB

RULING AND ORDER

Before the Court is the Defendants' **Motion for Partial Dismissal (Doc. 9)**, filed by Defendants Pala Interstate, LLC ("Pala") and Randel Ducote ("Ducote") (collectively "Defendants"), seeking an order from this Court dismissing Plaintiff Jarian Madison's ("Madison") "claims of defamation, intentional infliction of emotional distress ("IIED"), and harassment under federal (42 U.S.C.§ 2000e *et seq.* and 42 U.S.C. § 1981 *et seq.*) and Louisiana law (La. R.S. 23:301 *et seq.*)." *Id.* at 1. The motion is unopposed. Oral argument is not necessary. Jurisdiction is proper under the federal question jurisdiction of the Court.

I.  **Background**

Madison filed suit against the Defendants on November 25, 2013. (Doc. 1.) The complaint alleges that Madison began employment with Pala on May 29, 2013, in shipping and receiving as the only African American employee in his department. Madison had no prior experience working for Pala and was allegedly supposed to receive on the job training from his supervisor, Ducote, and another coworker. (Doc. 1,

at 3-4.) Madison claims that, on his second day of work, he heard his supervisor use the word "nigger" repeatedly in a conversation with a Caucasian coworker. *Id.* at 4. On the next day, Madison claims that Ducote used derogatory language in a safety meeting with the entire facility. Specifically, Ducote stated, "I fired a motherfucker just to hire a motherfucker worse than the motherfucker I fired." *Id.* Madison asserts that he was hired to replace an African American female who had been terminated.

On his fifth day of work, Madison asserts that, while alone with Ducote in the office, Ducote said to him that "the only experience you have with shipping/receiving is selling dope." *Id.* at 5. Later the same day, Madison asserts that Ducote again said that his only experience with shipping and receiving was selling drugs. This second comment, however, was made in front of two coworkers. Eventually, Ducote terminated Madison on June 6, 2012, for the alleged failure to follow directions, complete tasks, or understand the system. *Id.*

Madison claims that he received no written or verbal warnings prior to his termination, outside of the offensive comments made by his supervisor. He further asserts that he reported the termination and harassment to Pala's Human Resources Department on the day of his termination, and he was offered a laborer position at another facility, which was a demotion with less pay. *Id.* Madison asserts that he was replaced by a Caucasian male, who was promoted from a laborer position with no experience in shipping and receiving. *Id.* at 6.

On January 30, 2014, the Defendants filed a motion for partial dismissal of Madison's claims. (Doc. 9.) The Defendants seek dismissal of Madison's claims of

defamation, IIED, and harassment under federal and Louisiana law. Specifically, the Defendants assert that Madison's claims of defamation and IIED have prescribed under the applicable law. In any event, the Defendants contend that Madison has not met the requisite elements to be successful on any of his claims and that a partial dismissal should be granted. For the reasons cited herein, the motion is GRANTED.

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). In order to survive a Rule 12(b)(6) motion, a pleading's language, on its face, must demonstrate that there exists plausibility for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In determining whether it is plausible that a pleader is entitled to relief, a court does not assume the truth of conclusory statements, but rather looks for facts which support the elements of the pleader's claim. *Twombly*, 550 U.S. at 557. Factual assertions are presumed to be true, but "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678.

III. Analysis

A. Defamation and Intentional Infliction of Emotional Distress

The Defendants assert that "the conduct that serves as the basis for [Madison's] claims of IIED and defamation occurred no later than June 5, 2012, so these claims should have been filed by June 5, 2013. Because these claims were not asserted until November 25, 2013, they are prescribed on the face of the [c]omplaint[.]" (Doc. 9-1, at 5.) The Defendants contend that an "insurmountable bar to relief exists" and that Madison's failure to timely file suit is inexcusable under the law.[1] *Id.* In addition, the Defendants asserts that Madison "cannot salvage these claims by arguing that the prescriptive period was suspended during the pendency of his administrative charge filed with [the] Equal Employment Opportunity Commission [EEOC] pursuant to Louisiana Revised Statute 23:303(D)." *Id.* at 6. The Defendants aver that this provision of the Louisiana Employment Discrimination Law ("LEDL") is not applicable to state law defamation or IIED claims, as those claims are not created by the particular Chapter referenced in La. R.S. 23:303, which creates causes of action solely for employment discrimination. *Id.*

Because Madison has not presented any argument in opposition, the Court will assume that Madison concedes the applicability of the law cited by the Defendants. Indeed, tort claims under Louisiana law are subject to a liberative prescription period

---

[1] The Defendants direct the Court to *Murungi v. Touro Infirmary*, 2012 U.S. Dist. LEXIS 38804, *9-10 (E.D. La. March 21, 2012) (granting motion to dismiss on claim of IIED as prescribed on the face of the complaint where latest date of alleged wrongdoing was December 18, 2009, and plaintiff did not file claim until March 15, 2011).

4

of one year. La. Civ. Code art. 3492. Delictual actions have a one year prescriptive period, which "commences to run from the day injury or damage is sustained." *Id.* "Defamation is a delictual claim, and is subject to the one year prescriptive period." *Ioppolo v. Rumana*, 2012 WL 4960385, at *5 (M.D. La. 10/16/2012) (citation omitted). Similarly, because intentional infliction of emotional distress is a tort claim, it is also subject to a one year prescriptive period. *Id.* In the case of either tort, "[t]he filing of an [EEOC] claim does not toll, interrupt, or suspend the prescriptive period for state law claims."[2] *Murungi v. Touro Infirmary*, 2012 WL 1014811, at *3 (E.D. La. 3/21/2012) (citing *Drury v. U.S. Army Corps of Eng'rs*, 359 F.3d 366, 368 (5th Cir. 2004) (citation omitted).

Based on the facts and applicable law, the Court agrees with the Defendants and finds that Madison's claims for defamation and IIED have prescribed. After a review of the record, the Court notes that Madison's cause of action for these claims, at the very latest, should have been filed by June 5, 2013. This date represents one year from the last act of discrimination that Madison asserts in his complaint. Case law is clear and unequivocal that this prescriptive period is unyielding, and will be tolled only in

---

[2] See *Taylor v. Bunge Corp.*, 775 F.2d 617, 618–19 (5th Cir. 1985); *Fussell v. Bellsouth Communications, Inc.*, 1998 WL 12229 at *2 (E.D.La. Jan.8, 1998) ("The Fifth Circuit has clearly stated that the filing of an EEOC charge does not toll, interrupt, or suspend prescription with regard to a plaintiff's state law claims."); *Roth v. N.J. Malin & Assoc.*, 1998 WL 898367 at *5 (E.D. La. Dec. 21, 1998) ("[T]he case law ... has consistently held that the filing of an EEOC charge does not toll, interrupt, or suspend prescription with regard to a plaintiff's state law claims.") (internal quotations omitted); *Brouillette v. Transamerican Refining Corp.*, 1995 WL 683869 at * 4 (E.D. La. Nov. 11, 1995) ("Plaintiff's federal and state law claims are not embodied in the same legislative scheme.... Consequently, plaintiff's filing of administrative proceedings did not operate to toll or suspend the prescriptive period on plaintiff's state law claims."); *Weathersby v. Jacquet*, 813 So.2d 1135, 1140 (La. Ct. App. 3d Cir. 2002) ("Neither do we find merit in any assertion that a claim under federal law would in any way interrupt state law prescriptive periods.").

the most exceptional of circumstances. Madison has not alleged that the prescriptive period was, or should have been, tolled for any reason, nor has the Court recognized any in the complaint.

Moreover, the Court concludes that Madison's filing of an EEOC charge, albeit soon after his cause of action accrued, does not interrupt the prescriptive period of state law tort claims. As such, Madison's claims have prescribed, and the motion for partial dismissal on these claims is GRANTED.[3]

**B.     Harassment and Hostile Work Environment Claim**

The Defendants also assert that Madison falls grossly below the standard of federal and state law necessary to establish that he was subject to a harassment during his brief employment with Pala. In order to survive dismissal of this claim, Madison must present sufficient evidence to establish that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on national origin;[4] (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have

---

[3] The Defendants' motion asserts that, due to his failure to produce *any* evidence to support these claims, in the event that the Court were to find Madison's claims for defamation and IIED still timely, Plaintiff would still not meet the elements necessary to establish a cause of action under these torts. The Court finds validity to the Defendants' argument. However, because the Court finds that these claims have prescribed, it finds it unnecessary to conduct an analysis of the elements of those torts.

[4] Plaintiff has not made a claim that he was discriminated against based on his national origin. He asserts that the discrimination against him was based on his race. Nevertheless, the Court notes that, under the applicable law, the same analysis applies.

known of the harassment in question and failed to take prompt remedial action.[5] *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citations omitted). Here, the Defendants contend that Madison's claims do not rise to the level of actionable harassment under federal or state law because he cannot establish that the harassment complained of affected a term, condition, or privilege of his employment.[6] (Doc. 9-1, at 14.)

In order for harassment to affect a term, condition, or privilege of employment, it must be "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)). For harassment to be sufficiently severe or pervasive to alter the conditions of employment, the conduct complained of must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Aryain v. Wal-Mart Stores of Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008); *see also Harris*, 510 U.S. at 21-22. Thus, not only must the victim perceive the environment as hostile, the conduct must also be such

---

[5] However, where the harassment is allegedly committed by a supervisor with immediate authority over the harassed employee, the plaintiff need only satisfy the first four elements of the *prima facie* case. *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001).

[6] The Defendants correctly assert that Louisiana employment discrimination claims are analyzed in the same way as federal Title VII claims. Louisiana courts look to federal Title VII jurisprudence to interpret Louisiana discrimination laws. *King v. Phelps Dunbar, L.L.P.*, 743 So.2d 181, 187 (La.1999) (citing *Bustamento v. Tucker*, 607 So.2d 532, 538, n. 6 (La.1992)); *Wyerick v. Bayou Steel Corp.*, 887 F.2d 1271, 1274 (5th Cir. 2004). Therefore, the analysis applicable to Plaintiff's Title VII, or more specifically in this instance his § 1981 claims, also governs Plaintiff's state claims. Here, the Court's analysis of Madison's hostile work environment claim will apply for both federal and state law.

that a reasonable person would find it to be hostile or abusive. *Harris*, 510 U.S. at 21-22.

To determine whether the victim's work environment was objectively offensive, courts consider the totality of the circumstances, including: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating; (4) whether it interferes with an employee's work performance. *Id.* at 23. "Title VII, however, is not a general civility code, and simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Lauderdale v. Texas Dept. of Criminal Justice*, 512 F.3d 157, 163 (5th Cir. 2007) (internal citations omitted).

Here, the Court concludes that Madison has failed to state a claim for relief. After a review of the facts, the record in this matter, and the applicable law, the totality of the circumstances do not indicate that Madison was subject to a hostile work environment while employed at Pala. The Court agrees with the Defendants that "[t]he Fifth Circuit has made clear that . . . the legal threshold for an abusive work environment is high." *McClinton v. Sam's East, Inc.*, 2012 WL 4483492, at *5 ( W.D. La. 9/28/12).

While the Court notes that the allegations here, if true, amount to detestable conduct, Madison's failure to acknowledge that Ducote made the comments directly to him, as well as his failure to assert that Ducote made it a pattern or practice to discriminate against him, support the notion that this claim must be dismissed.

Madison has not provided evidence that he was physically harmed, humiliated to the point of extremity, or placed in an abusive situation that would be absolutely reprehensible to a reasonable person. He has not provided evidence that he was fearful of Ducote or other coworkers, or that the discriminatory conduct was so disconcerting or severe that he could not work. Indeed, Madison's complaint leads the Court to conclude that the only reason he left his employment with Pala is because he was terminated. *See* Doc. 1. Again, while rude and insensitive comments can be offensive, the courts have routinely emphasized that persons must be hardened to a certain amount of uncouth behavior in the workplace, and that sporadic incidents of indecency simply do not create a hostile work environment.

Moreover, Madison's six-day employment with Pala does not convince the Court that a frequent pattern of discriminatory conduct took place. While the courts have not established that a specific amount of time must elapse before a hostile work environment is created, as the Defendants point out, and the Court agrees, the isolated acts asserted in Madison's complaint are insufficient to meet the elements of a hostile work environment claim, particularly when the plaintiff has not allege with certainty that the comments were made specifically to him. The Court also notes that, after Madison was terminated in the shipping and receiving department, the Human Resources Department offered him another position. (Doc. 1.) In fact, Madison made preparations for the new position by applying for the necessary identification card. *Id.* at 6. While this fact does not necessarily show that a hostile work environment did not exist, it does call into question whether Madison's work conditions were intolerable. As

such, without more, the Court finds that a dismissal of this claim is proper.

IV. Conclusion

Accordingly,

**IT IS ORDERED** that Defendants' **Motion for Partial Dismissal (Doc. 9)** is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff Jarian Madison's claims of defamation, intentional infliction of emotional distress, and harassment under federal (42 U.S.C.§ 2000e *et seq.* and 42 U.S.C. § 1981 *et seq.*) and Louisiana law (La. R.S. 23:301 *et seq.*) are **DISMISSED.**

Baton Rouge, Louisiana, this 29th day of September, 2014.

_____
**BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**